UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JOHN J. KELLY | CIVIL ACTION |
| versus | NO.: 08-4310 c/w 08-4311 |
| PORTER, INC, et al | SECTION: "S"<br>JUDGE MARY ANN VIAL LEMMON |
| | MAG. (3)<br>MAG. DANIEL E. KNOWLES, III |

**MEMORANDUM IN SUPPORT OF
LOUISIANA YACHTING AND BOATING CENTER, LLC's,
PORTER, INC.'S, AND CHARLES INDUSTRIES, LTD'S
<u>MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

Defendants, Louisiana Yachting and Boating Center, LLC (hereinafter "Louisiana Yachting"), Porter, Inc. (hereinafter "Porter"), and Charles Industries, Ltd. (hereinafter "Charles Industries") submit this memorandum in support of their Motion for Summary Judgment on <u>all</u> claims filed by John J. Kelly in his individual capacity, and the claims for <u>loss of use</u> and <u>non-pecuniary damages</u> (including loss of enjoyment, and emotional

damages) filed by Maverick Motor Sports, II, LLC (hereinafter "Maverick Motor Sports II").

As shown below, Mr. Kelly does not own the *M/V MAVERICK*. Therefore, while acting in his individual capacity he has no standing to bring a claim for alleged damages related to the partial submersion of the *M/V MAVERICK*, and all of his claims should be dismissed. Further, although Maverick Motor Sports II has standing to bring an action for any alleged damages sustained by the *M/V MAVERICK*, prevailing jurisprudence holds that several of the classes of damages sought by Maverick Motor Sports II, (*i.e.*, loss of use and non-pecuniary damages) are unavailable.

For these reasons, Louisiana Yachting, Porter, and Charles Industries submit that this Court should grant this Motion for Partial Summary Judgment and dismiss <u>all</u> of the claims brought by John Kelly in his individual capacity, and the claims for <u>loss of use</u> and <u>non-pecuniary damages</u> brought by Maverick Motor Sports II, LLC.

I. **FACTUAL BACKGROUND:**

On April 12, 2007, Maverick Motor Sports II, LLC purchased a 2007 Formula recreational boat, the *M/V MAVERICK*, from Louisiana Yachting in Mandeville,

Louisiana.[1] Maverick Motor Sports II, LLC is a Delaware limited liability company whose sole member is Mr. John Kelly.[2] Although Mr. Kelly intended to use the *M/V MAVERICK* solely for his own recreational use, he decided that Maverick Motor Sports, II, LLC should purchase the *M/V MAVERICK* to "avoid sales tax…which [was] a considerable amount of money."[3] Therefore, although Mr. Kelly was the intended *user* of the *M/V MAVERICK*, the boat was and is actually *owned* by his limited liability company, Maverick Motor Sports II, LLC. As shown below, the corporate ownership of the *M/V MAVERICK* is extremely important to the adjudication of this motion.

Shortly after the *M/V MAVERICK* was purchased, Mr. Kelly navigated the boat from Tickfaw, Louisiana to Destin, Florida, where he moored it at a friend's house.[4] On the morning of Saturday, September 1st, 2007, Mr. Kelly planned to take the *M/V MAVERICK* to a nearby watering hole, Crab Island, with 15-16 friends.[5] When Mr. Kelly arrived at the *M/V MAVERICK* at 1:00 that afternoon,[6] several of his friends were already there,[7] and "everybody was in a hurry" to leave the slip.[8] However, while Mr. Kelly performed his pre-departure check of the *M/V MAVERICK*, he noticed that the toilets, several lights, and most of his dash controls were not working.[9]

---

[1] See Bill of Sale, attached hereto as Exhibit "A;" Coast Guard Registration Form, attached hereto as Exhibit "B;" Coast Guard Vessel Documentation for the MAVERICK, attached hereto as Exhibit "C."
[2] Operating Agreement of Maverick Motor Sports II, LLC, attached hereto as Exhibit "D."
[3] Deposition of John Kelly, attached hereto as Exhibit "E," at 157:10-158:14.
[4] Sworn Statement of John Kelly, attached hereto as Exhibit "F," at 40:17-42:06.
[5] Exhibit "F," at 49:09-49:24.
[6] Exhibit "E," at 52:05-52:08.
[7] Exhibit "E," at 53:05-53:23.
[8] Exhibit "F," at 62:09-69:22.
[9] Exhibit "E," at 55:13-56:05.

However, despite having knowledge of these electrical problems,[10] Mr. Kelly took the boat out to Crab Island anyway.[11] Although the problems continued throughout the day, Mr. Kelly and his friends were still able to have a good time. At 5:00-6:00 that evening, Mr. Kelly navigated the *M/V MAVERICK* back to its slip. While securing the vessel for the night, Mr. Kelly noticed that the generator, which powered the boat's air conditioning system, had shut down.[12] Hypothesizing that the generator shut down because of a clogged sea strainer,[13] Mr. Kelly went into the engine compartment and cleaned the sea strainer, which was "full of debris and trash."[14] In less than five minutes, Mr. Kelly was able to pull the strainer out, clean it, and replace it.[15] It should be noted that Mr. Kelly did not close the sea cock to prevent water from entering the vessel during this process. Although this solved the generator problem,[16] it did not solve the electrical problems that had plagued the *M/V MAVERICK* earlier that day. After hooking the *M/V MAVERICK* up to shore power, Mr. Kelly left the boat for the night.

Early on the morning of September 2, 2007, Mr. Kelly was awoken to a phone call informing him that the *M/V MAVERICK* was taking on water.[17] After rushing to the slip and seeing the sinking vessel, Mr. Kelly was faced with several questions: How did the

---

[10] Exhibit "F," at 64:01-64:06.
[11] Exhibit "F," at 64:07-64:08.
[12] Exhibit "E," at 59:19-60:04.
[13] Exhibit "E," at 60:07-60:11.
[14] Exhibit "E," at 61:01-61:02.
[15] Exhibit "F," at 67:14-68:22.
[16] Exhibit "E," at 64:25-66:03.
[17] Exhibit "F," at 69:25-70:06.

water enter the *M/V MAVERICK*? Why did the bilge pumps fail to prevent the water from accumulating? Why did the high water alarm fail to sound?

Mr. Kelly immediately learned the answer to his first question: he had failed to properly tighten the sea strainer,[18] and that if he had properly tightened the sea strainer, then the boat would not have taken on any water.[19] He also learned that although the bilge pumps were capable of handling the incoming water,[20] the bilge pumps could not do so because the battery charger had failed.[21] Lastly, he learned that the high water alarm – the "last line of defense" against the *M/V MAVERICK* submerging – failed to sound because it too was hooked up to the failed battery charger.[22]

In the aftermath of the September 1-2, 2007, incident, Mr. Kelly, acting in his role as managing member of Maverick Motorsports II, sought to recover for the loss from his insurance company, Great Lakes Reinsurance Co. (UK), PLC ("Great Lakes"). Although the claim is not yet finalized, Great Lakes has spent a few hundred thousand dollars repairing the *M/V MAVERICK*. These repairs have since been completed, and Mr. Kelly is once again using the *M/V MAVERICK* as a pleasure vessel.

II. **PROCEDURAL HISTORY:**

On August 29, 2008, two related complaints were filed. Great Lakes filed suit against Porter, Inc. (the manufacturer of the *M/V MAVERICK*), Charles Industries, Inc.

---

[18] Exhibit "F," at 78:07-81:03.
[19] Exhibit "F," at 101:12-101:18.
[20] Exhibit "E," at 154:16-155:09.
[21] Exhibit "F," at 100:22-102:19.
[22] Exhibit "E," at 150:23-151:24.

(the manufacturer of the battery charger), and Louisiana Yachting (the seller of the *M/V MAVERICK*), seeking to recover the amounts it paid to repair the damages sustained by the *M/V MAVERICK*.

Mr. Kelly, acting in his individual capacity, simultaneously filed a lawsuit against Porter, Inc. and Charles Industries, Inc. (Louisiana Yachting was not a named defendant).[23] In his complaint, Mr. Kelly seeks several categories of damages, including "loss of use," "emotional and mental pain and suffering," and "other damages to be fully shown at trial."[24] After these two suits were filed, they were consolidated and are currently set for trial in February 2010 before Your Honor.

Subsequently, Mr. Kelly filed an amended complaint, wherein Maverick Motorsports II, LLC was named as an additional Plaintiff.[25] In that amending complaint, Mr. Kelly and Maverick Motorsports II asked this Court to disregard the *M/V MAVERICK*'s corporate ownership by making the unsubstantiated allegation that Mr. Kelly was the boat's true owner.[26] Thereafter, Maverick Motorsports II adopted the entirety of Mr. Kelly's original complaint as its own by re-averring all of the allegations contained therein.[27]

---

[23] It should also be noted that Mr. Kelly also filed suit against Great Lakes, his own insurance company, for damages and bad faith in the Middle District of Louisiana. That suit has been dismissed without prejudice.
[24] Rec. Doc. 1 in 08-CV-4310, at Paragraph XI (B), (D), and (G).
[25] Rec. Doc. 23 in 08-CV-4310. It should be noted that to date Mr. Kelly and Maverick Motor Sports have not named Louisiana Yachting as a defendant. However, since their lawsuit was consolidated with the lawsuit filed by Great Lakes, Louisiana Yachting feels to compelled to address the damages sought in that suit out of an abundance of caution.
[26] Rec. Doc. 23 in 08-CV-4310, at Paragraph III.
[27] Rec. Doc. 23 in 08-CV-4310, at Paragraph IV.

However, despite Mr. Kelly's wishes to the contrary, he <u>does not own</u> the *M/V MAVERICK*. Therefore, with regards to any alleged damages resulting from the partial submersion of the *M/V MAVERICK* not paid by Great Lakes, Mr. Kelly has no standing to bring such an action in his individual capacity. Instead, Maverick Motorsports II is the owner of the *M/V MAVERICK* – and is the only entity who has any right of action to seek such damages.[28]

Moreover, since the *M/V MAVERICK* was used solely for recreational use, Maverick Motor Sports II cannot recover for loss of use. Furthermore, it is well-settled that a corporate entity such as Maverick Motor Sports II cannot recover non-pecuniary damages such as emotional distress. Therefore, Louisiana Yachting, Porter, and Charles Industries respectfully submit that this Court should grant their Motion for Partial Summary Judgment, and dismiss <u>all</u> claims brought by John Kelly in his individual capacity, and the claims brought by Maverick Motor Sports II for <u>loss of use</u> and <u>non-pecuniary damages</u>.

### III. SINCE HE IS NOT THE OWNER OF THE *M/V MAVERICK*, JOHN KELLY LACKS STANDING TO BRING A CLAIM FOR DAMAGES.

The Bill of Sale and Coast Guard registration documents for the *M/V MAVERICK* clearly indicate that Mr. Kelly is <u>not the owner</u> of the *M/V MAVERICK*.[29] Moreover, Mr. Kelly has admitted under oath that he is not the owner of the *M/V MAVERICK*:

---

[28] Of course, Mr. Kelly could bring these claims *on behalf* of Maverick Motor Sports II in his capacity as member of that entity. However, in that circumstance, the Plaintiff would actually be Maverick Motor Sports II, not John Kelly.
[29] See Exhibit "A" – "C."

> Q     ...Now, this is regards to the loss that you sustained with respect to a vessel that was actually owned by Maverick Power Sports or Power Boats, Limited, too, correct?
>
> A.     Yea, Maverick Motor Sports, that's correct.[30]

During his deposition, Mr. Kelly also admitted that Maverick Motor Sports II purchased the *M/V MAVERICK* so that he could avoid liability for Louisiana sales tax:

> Q.     So why is it that the – this boat's [the *M/V MAVERICK*] registered differently?
>
> A.     Taxes...I was given directives from some house counsel at the time that I had on this type of particular – setting up corporations that suggested that I – that I put it [ownership] in [an] LLC. It's a – you know, again, it was a Delaware corporation to – to avoid sales tax, which in this particular case, in Louisiana, it's about 9 percent, which is a pretty considerable amount of money...[31]

Since he is not the owner of the *M/V MAVERICK*, Mr. Kelly has no right whatsoever to seek compensation for any alleged damages sustained by the *M/V MAVERICK*. La. R.S. 12:1329 notes that members of limited liability companies (*i.e.*, John Kelly) have no interest in property owned by their limited liability companies (*i.e.*, Maverick Motor Sports II):

> A membership interest shall be an incorporeal movable. **A member shall have no interest in limited liability company property.**[32]

In *Van Meter v. Guitierrez, et al*,[33] The Louisiana Fourth Circuit noted that since limited liability companies are juridical entities, they, not the individual members, have a

---

[30] Exhibit "F," at 04:16-04:21.
[31] Exhibit "E," at 157:10-157:20.
[32] La. R.S. 12:1329 (emphasis added).

1749589_3.DOC

8

right of action to file suit in the event that the limited liability company (or its property) sustains damages:

> The proper party plaintiffs, that is, those who may assert a maintainable right of action against the appellees(s) for losses suffered by the corporations **are the juridical entities themselves** [the LLC]...[34]

Since the *M/V MAVERICK* is owned by Maverick Motor Sports II it – not John Kelly – has the necessary property interest in the *M/V MAVERICK* to file the instant suit. Therefore, all of the claims filed by John Kelly in his individual capacity should be dismissed.

## IV. MAVERICK MOTOR SPORTS II'S CLAIMS FOR LOSS OF USE, LOSS OF ENJOYMENT, AND EMOTIONAL DAMAGES SHOULD BE DISMISSED.

As discussed above, Maverick Motor Sports II, LLC, in its capacity as owner of the *M/V MAVERICK*, has standing to file the instant suit for any alleged damages arising out of the partial submersion of the *M/V MAVERICK*. However, several classes of the damages sought by Maverick Motor Sports II are not available, including damages for loss of use, loss of enjoyment, and emotional damages.

### A. SINCE THE *M/V MAVERICK* IS A RECREATIONAL VESSEL, MAVERICK MOTOR SPORTS II CANNOT RECOVER FOR LOSS OF USE.

The Courts have repeatedly held that owners of recreational vessels such as the *M/V MAVERICK* are not entitled to damages for loss of use. In *The Conqueror*,[35] the U.S.

---

[33] 897 So. 2d 781 (La. App. 4 Cir. 2005).
[34] *Id.* at 786 (emphasis added).
[35] 166 U.S. 110 (1897).

Supreme Court rejected a recreational boat owner's claim for loss-of-use damages.[36] In that case, the Plaintiff's boat was detained for over five months by an overzealous tax collector. In reversing the district court's award of loss of use damages, the U.S. Supreme Court stated the Plaintiff could not recover damages for loss-of-use because he failed to make the necessary showing of lost profits:

> In order to entitle a party to be indemnified for what is termed in this court a consequential loss, **being for the detention of his vessel**, two things are absolutely necessary **actual loss and reasonable proof of the amount.** It does not follow, as a matter of necessity that anything is due for the detention of a vessel while under repair."[37]

This rule, that a Plaintiff cannot recover loss-of-use damages without proving the existence of lost profits, has acted as an effective bar to recreational boat owners from being able to recover damages for loss of use. In *Delta S.S. Lines, Inc. v. Avondale Shipping*,[38] the U.S. Fifth Circuit adopted the rule of *The Conqueror* when it noted that a vessel owner can <u>only</u> recover loss-of-use damages by proving "[lost] profits with certainty."[39] The most recent decisions regarding this issue clearly foreclose recreational boat owners from recovering loss of use damages.

For example, in *Oppen v. Aetna Ins. Co.*,[40] the U.S. Ninth Circuit rejected a yacht owner's damages for loss of use by relying on the holding of *The Conqueror*. In that case, the Plaintiffs owned private pleasure boats which sustained physical damages from

---

[36] *Id.* at 111.
[37] *Id.*, at 125 (emphasis added).
[38] 747 F. 2d 995 (5th Cir. 1984).
[39] *Id.* at 1001.
[40] 485 F. 2d 252 (9th Cir. 1973).

contact with an oil slick.[41] In affirming the special master's dismissal of their loss-of-use claim, the U.S. Ninth Circuit noted:

> Under federal maritime law **loss of use of a private pleasure boat is not a compensable item of damages**.[42]

Several other decisions make it clear that due to the Supreme Court's decision in *The Conqueror*, recreational boat owners cannot recover for loss of use.[43] Here, there is no question that the *M/V MAVERICK* was used by Maverick Motor Sports II (*i.e.*, Mr. Kelly) for recreational activities – poker runs, beach trips, etc.[44] There is absolutely no evidence that the *M/V MAVERICK* was ever leased out for charter or rent. Moreover, even if Maverick Motor Sports II now claims that it ***intended*** to place the *M/V MAVERICK* into commerce, damages for loss-of-use would still not be recoverable because these claims would be too speculative.[45]

Since Maverick Motor Sports II cannot bear its burden of proving that it suffered any lost profits during the time period that the *M/V MAVERICK* was being repaired, this Court should dismiss its claim for loss-of-use damages.

---

[41] *Id.* at 254.
[42] *Id.* at 258 (emphasis added).
[43] *See, e.g., Snavely v. Lang,* 592 F. 2d 296, 298 (6th Cir. 1979) (noting the existence of "an iron clad rule that under federal maritime law demurrage is not an allowable item of damage for loss-of-use of a pleasure vessel.").
[44] The *M/V MAVERICK*'s registration documents show that it was also registered as a "recreational" vessel. *See* Exhibit "B" at LYB 199 and Exhibit "C."
[45] *See, e.g., Parrillo v. Commercial Union Insurance Company,* 85 F. 3d 1245, 1251 (7th Cir. 1996) (rejecting a plaintiff's allegations that he could have chartered the vessel as too speculative to support an award of damages for loss of use); *In Re Essroc Canada, Inc.,* 2002 WL 31557973 (W.D.N.Y June 14, 2002) (rejecting a recreational boat owner's claim for loss of use damages despite his claim that the boat was used for business entertainment).

### B.  CORPORATE ENTITIES SUCH AS MAVERICK MOTOR SPORTS II CANNOT RECOVER NON-PECUNIARY DAMAGES SUCH AS LOSS OF ENJOYMENT OR EMOTIONAL DAMAGES.

As noted in Section II, when Maverick Motor Sports II joined this lawsuit it re-averred and re-alleged all of the allegations contained in Mr. Kelly's complaint. Therefore, Maverick Motor Sports II is seeking to recover "emotional pain and suffering" as well as "other damages to be shown more fully at trial."[46] In recent discussions with counsel for plaintiff, defendants were informed that plaintiff is seeking "loss-of-enjoyment" damages. However, the fact that Maverick Motor Sports II is a corporate entity forecloses the recoverability of certain classes of damages – namely, non-pecuniary damages (which includes "emotional" and "loss of enjoyment" damages). As shown below, this rule of law is well settled in the U.S. Fifth Circuit.

In *Walle Corporation v. Rockwell Graphics Systems, Inc.*,[47] the Eastern District of Louisiana rejected a corporate plaintiff's attempt to recover non-pecuniary damages. In that case, the plaintiff alleged that the defendants' breach of contract caused it inconvenience and sought "inconvenience damages" as compensation. In response to this claim for damages, the defendants argued that non-pecuniary damages were not recoverable for a corporate entity. In dismissing the plaintiff's damages claim, the Court noted that corporate entities can only suffer <u>economic losses</u>:

> This Court holds that a corporation cannot recover inconvenience damages, or any non-pecuniary damages. First, this rule is most consistent with the

---

[46] Rec. Doc. 1 in 08-CV-4310, at Paragraph XI.
[47] 1992 WL 245963 (E.D. La. Sept. 21, 1992).

prohibition of other non-pecuniary damage awards to corporate plaintiffs under Louisiana law, as described above.

Second, the notion that a corporation can suffer damages for inconvenience without losing profits defies logic...To the extent that the inconvenience is not reflected in Walle's lost profits or expenses, Walle has not been injured. **As an entity designed to produce profits, the only type of loss a corporation can suffer is economic.** A corporation cannot be inconvenienced.[48]

Many other cases support the conclusion that a corporation cannot recover non-pecuniary damages such as loss of enjoyment or emotional distress. In *AT&T Corp. v. Columbia Gulf Transmission Co.*,[49] the Western District of Louisiana noted that "it is manifest that a corporation cannot incur damages for inconvenience or mental anguish."[50] Lastly, in another Western District of Louisiana case entitled *In re James Noel Flying Service, Inc.*, the Court noted that "this absolute bar to an award for damages for mental anguish to a corporate plaintiff does not depend on whether the action is brought in contract or tort."[51]

Therefore, Defendants request that this Court dismiss the claims brought by Maverick Motor Sports II for non-pecuniary damages, including its claims for "emotional damages" and "loss of enjoyment."

---

[48] *Id.* at *5 (emphasis added).
[49] 2008 WL 4585439 (W.D. La. Sept. 15, 2008).
[50] *Id.* at *3. *See also, e.g., Frank C. Minvielle, LLC v. IMC Global Operations, Inc.*, 380 F. Supp. 2d 755, 772 (W.D. La. Oct. 19, 2005); *Covia Partnership v. River Parish Travel Center*, 1992 WL 364775, *5 (E.D. La. Nov. 23, 1992). *Hogan Exploration, Inc. v. Monroe Engineering Associates, Inc.*, 430 So. 2d 696, 704 (La. App. 2 Cir. 1983).
[51] 61 B.R. 335, 338 (U.S. Bankr. W.D. La. March 24, 1986).

V.  **STANDARD OF REVIEW:**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the record as a whole shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.[52] The moving party need not produce evidence negating the existence of a material fact, but need only point out the absence of evidence supporting the nonmoving parties' case.[53]

When the moving party has carried its burden under Rule 56(c), "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."[54] The opposing party must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denial of the pleadings.[55] Where the record taken as a whole could not lead a rational trier-of-fact to find for the nonmoving party, there is no "genuine issue for trial" and the motion should be granted.[56]

VI.  **CONCLUSION:**

As shown in sections I-IV of this memorandum, Louisiana Yachting, Porter, and Charles Industries have satisfied the summary judgment standard set forth in section V. There is no genuine issue of material fact as to the ownership of the *M/V MAVERICK*: it

---

[52] FED. R. CIV. P. 56(c).
[53] *Latimer v. Smith Kline & French Laboratories*, 919 F.2d 301, 303 (5th Cir. 1990).
[54] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also, Tubacex, Inc. v. M/V RISAN*, 45 F.3d 951, 954 (5th Cir. 1995).
[55] FED R. CIV. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).
[56] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 474, 585-586 (1986).

is owned by Maverick Motor Sports II – <u>not</u> John Kelly. Therefore, <u>all</u> of the claims brought by John Kelly in his individual capacity should be dismissed.

Furthermore, there is no genuine issue of fact as the fact that the *M/V MAVERICK* is a recreational vessel. Therefore, the claim for "loss of use" damages brought by Maverick Motor Sports II should be dismissed. Lastly, there is no genuine issue of material fact as to whether a corporate entity such as Maverick Motor Sports II can recover non-pecuniary damages. Therefore, the claims brought by Maverick Motor Sports II, LLC which seek non-pecuniary damages (which includes its claim for emotional damages and loss of enjoyment) should be dismissed.

Respectfully submitted:

KEAN, MILLER, HAWTHORNE, D'ARMOND, MCCOWAN & JARMAN, L.L.P.

_____
BRADLEY J. SCHLOTTERER (#24211)
SEAN T. McLAUGHLIN (#31870)
First Bank Building, Suite 1450
909 Poydras Street
New Orleans, LA 70112
Telephone: (504) 585-3050
Facsimile: (504) 585-3051
ATTORNEYS FOR LOUISIANA YACHTING AND BOATING CENTER, LLC

- AND -

TAYLOR, PORTER, BROOKS, & PHILLIPS, L.L.P.

/s C. Michael Hart
C. MICHAEL HART (#14352)
451 Florida Street, 8th Floor
P.O. Box 2471
Baton Rouge, Louisiana 70821
Telephone: (225)-387-3221
Facsimile: (225)-346-8049
ATTORNEY FOR PORTER, INC.

- AND -

LAW OFFICES OF SHERYL STORY

/s Gregory W. Roniger
GREGORY W. RONIGER (#9774)
One Galleria Boulevard, Suite 1610
Metairie, Louisiana 70001
Telephone: (504)-841-5080
Facsimile: (504)-841-5095
ATTORNEY FOR CHARLES INDUSTRIES, LTD.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this the ___7th___ day of December, 2009, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to those who are non-CM/ECF participants.

_____
BRADLEY J. SCHLOTTERER

1755755-1