**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**JOHN J. KELLY, ET AL.**                         **CIVIL ACTION**

**VERSUS**                                        **NO. 08-4310 C/W 08-4311**

**PORTER, INC., ET AL.**                          **DIVISION 3**

**ORDER**

Before the Court are the Motion for Partial Summary Judgment filed by defendants Louisiana Yachting and Boating Center, L.L.C., Porter, Inc. and Charles Industries, Ltd. [Doc. #51] and the Motion for Summary Judgment, or in the Alternative, Motion for Partial Summary Judgment filed by defendants Louisiana Yachting and Boating Center, L.L.C., Porter, Inc. and Charles Industries, Ltd. [Doc. #61]. This case is before the undersigned Magistrate Judge pursuant to the consent of the parties. 28 U.S.C. § 636(c).

On January 13, 2010, the motions came on for oral hearing before the undersigned. Present were Leonard Cardenas on behalf of plaintiffs John J. Kelly and Maverick Motor Sports II, L.L.C., James Doyle on behalf of plaintiff Great Lakes Reinsurance Co., C. Michael Hart on behalf of defendant Porter, Inc., Gregory Roniger on behalf of defendant Charles Industries, Ltd. and Bradley Schlotterer and Sean McLaughlin on behalf of defendant Louisiana Yachting and Boating Center, L.L.C. After oral argument, the Court took the motions under advisement. The Court has reviewed the motions, the oppositions thereto, the reply memoranda, the applicable law and the parties' oral

argument. For the following reasons, the Court GRANTS the Motion for Partial Summary Judgment filed by defendants Louisiana Yachting and Boating Center, L.L.C., Porter, Inc. and Charles Industries, Ltd. [Doc. #51]. The Court further GRANTS IN PART AND DENIES IN PART the Motion for Summary Judgment, or in the Alternative, Motion for Partial Summary Judgment filed by defendants Louisiana Yachting and Boating Center, L.L.C., Porter, Inc. and Charles Industries, Ltd. [Doc. #61].

I.    **Background**

In 2007, plaintiff Maverick Motor Sports II, L.L.C. ("Maverick") purchased a 2007 Formula recreational boat, the M/V MAVERICK ("the vessel"), from Louisiana Yachting and Boating Center, L.L.C. ("Louisiana Yachting") in Madisonville, Louisiana. Maverick is a Delaware limited-liability company whose sole member is plaintiff John J. Kelly. Kelly intended the vessel for personal use but formed Maverick to purchase it to avoid Louisiana sales tax.

Kelly moored the boat in Destin, Florida. On September 1, 2007, Kelly intended to take the vessel to Crab Island with some friends. While Kelly performed the pre-departure check, he noticed that the toilets, several lights and most of the dash controls did not work. Kelly took the vessel out despite the problems. The vessel later returned safely to its slip. While securing the vessel, however, Kelly noticed that the air-conditioning system had shut down. Believing that a clogged sea strainer had caused the problem, Kelly entered the engine compartment and cleaned the sea strainer, which was "full of debris and trash." (Ex. E at p. 61, attached to Defs.' Mem. Supp.). In less than five minutes, Kelly had cleaned and replaced the sea strainer. Kelly did not close the seacock to prevent water from entering the vessel during this process. Kelly then left the boat for

the night.

On September 2, 2007, Kelly received a call from a friend who informed him that the boat was taking on water. When he arrived at the vessel, the vessel's engine room was filled with water, and the engines were within approximately six inches of complete submersion. Kelly filed a claim with his insurance company, Great Lakes Reinsurance Co. (UK), P.L.C. ("Great Lakes"), who has allegedly spent a few hundred thousand dollars to repair the vessel.

On August 29, 2008, Great Lakes sued Porter, Inc. ("Porter"), the vessel's manufacturer, Charles Industries, Ltd. ("Charles"), the manufacturer of the battery charger, and Louisiana Yachting, the seller, seeking to recover the amounts that it had paid to repair the vessel. That same date, Kelly, in his individual capacity, sued Porter and Charles. Kelly seeks damages for loss of use, emotional and mental pain and suffering and other damages. The suits were consolidated. Kelly later filed an amended complaint, naming Maverick as an additional plaintiff.

## II. Summary Judgment Standard

Summary judgment is appropriate when there are no genuine issues as to any material facts, and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A court must be satisfied that no reasonable trier of fact could find for the nonmoving party or, in other words, "that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict in [his] favor." *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). The moving party bears the burden of establishing that there are no genuine issues of material fact.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325; *Lavespere*, 910 F.2d at 178. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See Celotex*, 477 U.S. at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue exists for trial. *See id.* at 325; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

III.    **Analysis**

    A.    **Motion for Partial Summary Judgment filed by Defendants Louisiana Yachting and Boating Center, L.L.C., Porter, Inc. and Charles Industries, Ltd.**

Louisiana Yachting, Porter and Charles (collectively, "defendants") seek summary judgment on all claims filed by plaintiff John J. Kelly in his individual capacity and the claims for loss of use and other non-pecuniary damages (including loss of enjoyment and emotional damages) filed by Maverick.

        1.    **Kelly's Claims in His Individual Capacity**

Defendants first argue that because Kelly is not the owner of the vessel, he has no standing to sue in his individual capacity. At his deposition, Kelly admitted that Maverick purchased the vessel and that it did so to avoid tax consequences. (Ex. E, attached to Defs.' Mem. Supp., at pp. 157-58). Citing Louisiana Revised Statute § 12:1329, defendants contend that "[a] member shall have no interest in limited liability company property." La. Rev. Stat. § 12:1329. Defendants note

that Louisiana courts, in such cases as *Van Meter v. Gutierrez*, 897 So. 2d 781 (La. Ct. App. 2005), have held that because a limited liability company is a separate juridical entity from its members, that entity alone has the right of action to sue in the event the limited liability company's property sustains damage. Defendants thus argue that all of Kelly's claims in his individual capacity should be dismissed.

Plaintiffs argue that defendants' reliance on the Coast Guard registration, the title or the bill of sale as conclusive ownership of the vessel is misplaced. Citing *Southern Bell Telephone & Telegraph Co. v. Burke*, 62 F.2d 1015 (5th Cir. 1933), plaintiffs argue that a statement in the registry that a corporation solely owns a vessel does not estop an individual owner from proving his sole individual ownership of the vessel.

Plaintiffs note that since this is a diversity action, the question of ownership of a vessel is governed by state law. *St. Paul Fire & Marine Ins. Co. v. Vesta Transp. Co.*, 666 F.2d 932 (5th Cir. 1982). Plaintiffs note that Louisiana law has long recognized that the registry is not conclusive of title. *Fort Pitt Nat'l Bank v. Williams*, 9 So. 117 (1891); *see also Provest v. Bergeron*, 70 So. 2d 401, 403 (La. Ct. App. 1954) ("[T]he registry of vessels only regulates the natural character of the vessel, and does not furnish evidence of ownership, and a change of papers is not necessary to vest title in her purchaser. It is not even prima facie evidence in favor of the party named therein as owner."). Plaintiffs point out that federal courts also recognize this principle. *In re Amanda Le*, No. 07-34244, 2007 WL 4197515 (S.D. Tex. Nov. 21, 2007).

Kelly is the sole owner of all stock in Maverick. The sole purpose for the creation of the limited liability company, Maverick, was to purchase the vessel and to avoid sales tax. The funds

used to purchase the vessel were Kelly's individual funds, he is the personal guarantor of the loan used to finance the vessel, and he is the exclusive operator of the vessel. Accordingly, plaintiffs contend, he has standing to sue in his individual capacity.

In their reply, defendants note that Kelly's affidavit does not dispute his deposition testimony that Maverick owns the vessel. Again citing Louisiana Revised Statute § 12:1329, defendants argue that "[a] member shall have no interest in limited liability company property." La. Rev. Stat. § 12:1329. Defendants assert that Kelly asks the Court to engage in "reverse veil piercing," a mechanism strongly disfavored by the Louisiana courts. Citing Louisiana case law, defendants maintain that Louisiana courts refuse to allow an individual to recover damages for property owned by a corporation. *Associated Hosp. Servs., Inc. v. State Dep't of Revenue & Taxation*, 588 So. 2d 356 (La. 1991) (refusing to allow "reverse veil piercing" and noting that "[w]hen a taxpayer has chosen to do business as a corporation, it must accept the tax disadvantages of that form and will not be heard to deny the separate existence of that corporation"); *Hinchman v. Oubre*, 445 So. 2d 1313 (La. Ct. App. 1984) (finding that since corporation suffered damages to corporate property, individual had no personal right of action; "A person who conducts business in corporate form and reaps the benefits of incorporation cannot sue individually for damages incurred by the corporation."). In short, defendants argue that Kelly can not have it both ways.

Defendants dispute the case law on which Kelly relies. Defendants factually distinguish all of the case law on which Kelly relies to establish his equitable ownership of the vessel. Ultimately, defendants note that Kelly asks the Court to determine the owner depending on who is asking the question: If the Louisiana Department of Revenue wants to know, Maverick owns the boat. If the

Court wants to know, Kelly owns the boat.

The parties do not dispute that, in this diversity suit, state law governs the ownership of the vessel. *St. Paul Fire & Marine Ins. Co. v. Vest Transp. Co., Inc.*, 666 F.2d 932, 938 (5th Cir. 1982) (noting, in admiralty suit, "[t]he question of ownership of a vessel is ordinarily governed by state law."). As noted above, Louisiana law provides that "[a] membership interest shall be an incorporeal movable. A member shall have no interest in limited liability company property." La. Rev. Stat. § 12:1329. Louisiana courts have unanimously interpreted this provision to bar an individual member of a limited liability company from pursuing an action for damages to the property of the limited liability company. *See N.E. Realty, L.L.C. v. Misty Bayou, L.L.C.*, 920 So. 2d 938, 941 (La. Ct. App. 2006) (holding that members of limited liability company held no individual interest in disputed property owned by limited liability company and granting exception of no right of action); *Van Meter v. Gutierrez*, 897 So. 2d 781, 786 (La. Ct. App. 2005) (granting exception of no right of action and finding that the proper party plaintiff in suit for damages to property of limited liability company was only the juridical entity itself); *see also Metro Riverboat Assocs., Inc. v. Bally's La., Inc*, 779 So. 2d 122,125 (La. Ct. App. 2001) (finding that member of limited liability company had no standing to sue co-member on claim for breach of management agreement because limited liability company, not member, was party to management agreement); *Hinchman v. Oubre*, 445 So. 2d 1313 (La. Ct. App. 1984) (granting exception of no right of action and finding that "[i]f a corporation has sustained a loss then only that corporation can sue to recover it."). In short, Louisiana law provides that Kelly -- even as the sole member of Maverick -- has no ownership interest in Maverick's property.

While the Court recognizes that a vessel's documentation of title and registry is not conclusive of the ownership of a vessel, it is *prima facie* evidence of ownership. *St. Paul Fire & Marine*, 666 F.2d at 938. Here, both the Bill of Sale and the Coast Guard registration documents indicate that Maverick is the owner of the vessel. (Exs. A, B and C, attached to Defs.' Mem. Supp.). Moreover, Kelly admitted at his deposition that Maverick owns the vessel:

> Q      ...Now, this is regards to the loss that you sustained with respect to a vessel that was actually owned by Maverick Power Sports or Power Boats, Limited, too, correct?
>
> A.      Yes, Maverick Motor Sports, that's correct.

(Dep. of John J. Kelly at p. 4, attached as Ex. F to Defs.' Mem. Supp.). Moreover, Kelly admitted that he formed Maverick to avoid Louisiana sales tax:

> Q.      So why is it that the -- this boat's [the M/V MAVERICK] registered differently?
>
> A.      Taxes . . . I was given directives from some house counsel at the time that I had on this type of particular -- setting up corporations that suggested that I -- that I put it [the ownership] in [an] LLC. It's a -- you know, again, it was a Delaware corporation to -- to avoid sales tax, which in this particular case, in Louisiana, it's about 9 percent, which is a pretty considerable amount of money . . .

(*Id.* at p. 157). Kelly's affidavit, attached to plaintiffs' memorandum in opposition, does not contest these statements. Notwithstanding that Kelly is the sole owner of all stock in Maverick, the funds used to purchase the vessel were Kelly's individual funds, he is the personal guarantor of the loan used to finance the vessel, and he is the exclusive operator of the vessel, Maverick is a separate juridical entity from Kelly himself. When that separate juridical entity suffers losses to its property, that entity is the proper party plaintiff to pursue an action against the alleged tortfeasor.

The case law on which plaintiffs rely provides them little support as they are all factually

inapposite. In *Southern Bell Telephone & Telegraph Co. v. Duke*, for example, the corporation that had earlier owned the vessel had dissolved, and ownership of the vessel had divested to the corporation's sole shareholder, Owen Burke. 62 F.2d 1015, 1016 (5th Cir. 1933). Burke failed to change the registry to reflect the change in ownership. *Id.* The court held that even though Burke stated under oath that the corporation owned the vessel, that statement alone did not prevent him from suing a wrongdoer for damages because he had individually become the owner after the dissolution of the corporation. *Id.* That is not the issue here. Kelly makes no claim that Maverick has dissolved and that its assets have passed to him.

Moreover, the Court finds that all of the case law cited by plaintiffs is inapposite in that the decisions were all rendered well before the Louisiana legislature enacted Louisiana Revised Statute § 12:1329 in 1992. *Prevost v. Bergeron*, 70 So. 2d 401 (La. Ct. App. 1954), and *Fort Pitt National Bank v. Williams*, 9 So. 117 (La. 1891), were decided long before Section 12:1329 existed. Section 12:1329 now controls the Court's analysis as to the ownership interest of a member of a liability company. And that statute is clear: A member of a limited liability company has no interest in the limited liability company's property. Accordingly, because Maverick owns the vessel, Kelly has no ownership interest in it and has no right of action to sue defendants to recover damages in his individual capacity.

### 2. Maverick's Claim for Loss of Use and Other Non-Pecuniary Damages

Defendants next challenge Maverick's claim for loss of use and emotional damages. Citing United States Supreme Court and Fifth Circuit precedent, defendants argue that recreational boat owners may not recover damages for loss of use without a showing of lost profits with certainty.

*The Conqueror*, 166 U.S. 110, 125 (1897); *Delta S.S. Lines, Inc. v. Avondale Shipping*, 747 F.2d 995 (5th Cir. 1994). As the Ninth Circuit has noted, "[u]nder federal maritime law loss of use of a private pleasure boat is not a compensable item of damage." *Oppen v. Aetna Ins. Co.*, 485 F.2d 252, 254 (9th Cir. 1973). Defendants note that there is no evidence in the record that the vessel was used for anything but recreational activities.

Defendants assert that corporate entities such as Maverick can not recover non-pecuniary damages such as loss of enjoyment or emotional damages. Citing case law from this circuit, defendants argue that corporate entities can only suffer economic losses. *Walle Corp. v. Rockwell Graphics Sys., Inc.*, Civ. A. No. 90-2163, 1992 WL 245963 (E.D. La. Sept. 21, 1992); *see also AT&T Corp. v. Columbia Gulf Transmission, Co.*, Civ. A. No. 07-1544, 2008 WL 4585439 (W.D. La. Sept. 15, 2008) (no corporate recovery for mental anguish); *In re James Noel Flying Serv., Inc.*, 61 B.R. 335, 338 (W.D. La. Mar. 24, 1986) (same). Accordingly, defendants contend, this claim must be dismissed.

Plaintiffs argue that if the Court finds Kelly to be the owner of the vessel, there is no dispute that he may sue for loss of use and other non-pecuniary damages. Plaintiffs contend that Louisiana law controls the claims of both plaintiffs rather than maritime law. Citing *Robinson v. America Marine Holding, Inc.*, Civ. A. No. 01-0882, 2002 WL 441323 (E.D. La. Mar. 19, 2002), plaintiffs note that this Court has held that the substantive law of Louisiana applies to a plaintiff who seeks rescission of the sale of a fishing vessel due to the alleged defects and vices in its construction. Citing no support for their argument, plaintiffs assert that Louisiana law has long recognized that the buyer of a recreational vessel is entitled to non-pecuniary damages and makes no distinction

between "persons" who are individuals and entities such as corporations. Plaintiffs contend that the cases cited by defendants are inapposite because they involved commercial fishing vessels purchased and used for pecuniary purposes and arose from torts arising on navigable waterways. These cases, argue plaintiffs, use "loss of use" interchangeably with "loss of profits." However, under Louisiana products-liability law, "loss of use" is "deprivation of enjoyment." As long as Kelly is the true owner, plaintiffs maintain, he has the right to pursue the recovery of non-pecuniary damages.

In their reply, defendants argue that plaintiffs wholly fail to challenge their position that Maverick may not recover non-pecuniary damages. Citing a plethora of case law from Louisiana federal and state courts, defendants maintain that corporate entities may not recover non-pecuniary damages. Defendants assert that the dismissal of Maverick's claims for non-pecuniary damages will necessarily encompass its claim for "loss of use," given that Maverick has admitted that "loss of use" is the same as "deprivation of enjoyment."

At oral argument, counsel for plaintiff conceded that if the Court determines that Maverick is the owner of the vessel, then Maverick can recover no non-pecuniary damages. Louisiana federal courts have consistently held that a juridical entity such as a corporation or a limited liability company can suffer only economic damage: "As an entity designed to produce profits, the only type of loss a corporation can suffer is economic." *Walle Corp.*, 1992 WL 245963, at *5. Louisiana federal courts follow *Walle Corp.* to hold that a corporation or limited liability company can not suffer non-pecuniary damages in the form of, *inter alia*, negligent or intentional infliction of emotional distress, loss of enjoyment, inconvenience and, in general, mental and emotional damages.

*See Big Bucks Preserve, L.L.C. v. Columbia Gulf Transmission Co.*, No. Civ. A. 08-2021, 2009 WL 5173929 (W.D. La. Dec. 30, 2009) (finding that limited liability company can not sustain non-pecuniary damages); *AT&T Corp. v. Columbia Gulf Transmission, Co.*, Civ. A. No. 07-1544, 2008 WL 4585439 (W.D. La. Sept. 15, 2008) (no corporate recovery for mental anguish); *In re James Noel Flying Serv., Inc.*, 61 B.R. 335, 338 (W.D. La. Mar. 24, 1986) (same). The Court finds that the case law does not support Maverick's argument. Accordingly, Maverick, as a limited liability company, can not recover damages for loss of use or other non-pecuniary damages.

**B.**     **Motion for Summary Judgment, or in the Alternative, Motion for Partial Summary Judgment Filed by Defendants Louisiana Yachting and Boating Center, L.L.C., Porter, Inc. and Charles Industries, Ltd.**

In this second motion, defendants ask the Court to dismiss all of plaintiffs' claims, or, in the alternative, to dismiss all of plaintiffs' design-defect claims and Great Lakes' claims in redhibition and for punitive damages.

### 1.     Design-Defect Claims/Causation

Defendants first argue that plaintiffs' claims should be dismissed in their entirety because Kelly's reliance on a component known to have earlier broken is neither a normal or reasonably anticipated use under either the Louisiana Products Liability Act ("LPLA"), La. Rev. Stat. §§ 9:2800.51 *et seq.*, or the Restatement (Second) of Torts § 402(A). Defendants note that it is undisputed that Kelly knew that the vessel's battery charger was not working properly when he hooked up the vessel to shore power. Defendants argue that Kelly then ignored or blatantly disregarded the fact that the bilge pump and the high water alarm were also inoperable because they were attached to the failed battery charger.

Noting that a plaintiff must satisfy a two-tiered burden under the LPLA, defendants contend that if plaintiffs' damages do not arise from a reasonably anticipated use of the product, a court need not determine whether a characteristic of the product rendered it unreasonably dangerous. *Johnson v. Black & Decker U.S., Inc.*, 701 So. 2d 1360, 1362 (La. Ct. App. 1997); *see also* La. Rev. Stat. § 9:2800.54(D) (stating that a plaintiff must show that (1) his damages were proximately caused by a characteristic of the product that renders it unreasonably dangerous, and (2) his damages arose from a reasonably anticipated use of the product). Because federal courts have applied the LPLA to maritime products liability law when its provisions are consistent with Section 402A of the Restatement (Second) of Torts, defendants argue that Kelly's blatant disregard of a known danger is neither a "normal" nor "reasonably anticipated" use under the law. Citing Louisiana case law, defendants note that operating a product with a known danger is not normal use. *Blanchard v. Midland Risk Ins.*, 817 So. 2d 548 (La. Ct. App. 2002); *Whitacre v. Halo Optical Prods., Inc.*, 501 So. 2d 994, 999 (La. Ct. App. 1987). Defendants point to excerpts of the deposition testimony of Kelly and a Mr. Fisher from Louisiana Yachting to argue that Kelly knew that the batteries did not work prior to departure. (Ex. D at pp. 81-82, attached to Defs.' Mem. Supp.). Defendants assert that the owner's manual indicates that the bilge pumps are powered by the house batteries. (Ex. E at p. 5-3, 5-5, attached to Defs.' Mem. Supp.). Kelly has admitted that he has never fully read the owner's manual. (Ex. C at pp. pp. 19-20, attached to Defs.' Mem. Supp.). Defendants contend that, under the law, an owner is presumed to have read and understood the owner's manual. *Scott v. Black & Decker, Inc.*, 712 F.2d 251 (5th Cir. 1983). Accordingly, defendants assert that plaintiffs' claims should be dismissed.

Defendants also argue that Kelly's imprudent actions alone rendered the vessel unseaworthy and were the sole cause of the vessel's damages. Defendants note that there is a duty to maintain a vessel in seaworthy condition. Despite Kelly's knowledge of the inoperable battery charger, defendants point out that he still chartered the vessel on September 1, 2007. Defendants' expert testified that if any electrical problem exists on a boat, "you'd better either fix it or stay home." (Ex. F at p. 15, attached to Defs.' Mem. Supp.).

Producing further testimony from its expert, defendants outline the proper procedures to clean a blocked sea strainer, a procedure that Kelly allegedly did not follow. (Ex. G at pp. 9-10, attached to Defs. Mem. Supp.). Defendants contend that Kelly committed two fundamental errors: (1) he failed to shut off the seacock valve which allowed water to enter the vessel as he cleaned the strainer; and (2) he failed to properly re-secure the sea strainer lid. Both defendants' expert and a Mr. Wager, an insurance adjuster hired by Great Lakes, ultimately concluded that Kelly's actions alone caused the ingress of water and the submersion of the vessel. (Ex. H, attached to Defs. Mem. Supp.).

Defendants also assert that plaintiffs can offer no expert testimony as to any design defect on the vessel. Thus, defendants contend, the design-defect claims should be dismissed. Defendants point out that, under the LPLA, plaintiffs must prove that the product is unreasonably dangerous and present evidence of an alternative design for the product that was capable of preventing the damage. Defendants note that plaintiffs have produced no such evidence here. In contrast, defendants assert that they have produced evidence that the vessel complied with all applicable design standards.

Defendants note that plaintiffs assert that the vessel was defective because it failed to contain a redundant battery charger. Defendants' expert testified that there is no such requirement. (Ex. G at p. 14, attached to Defs.' Mem. Supp.). Plaintiffs also argue that the installation of an additional water tank above the sea strainer caused the sea strainer to be inaccessible. However, defendants note that Kelly asked for the installation of the additional water tank after purchasing the vessel. Mr. Fisher also testified that Kelly stated that the sea strainer was still accessible after the installation of the additional water tank. (Ex. D at pp. 56-57, attached to Defs.' Mem. Supp.). Defendants' expert further testified that the sea strainer was readily accessible. (Ex. G at p. 13, attached to Defs.' Mem. Supp.).[1] Plaintiffs also claim that wiring the high water alarm to the same battery as the bilge pump is a defective design. Defendants' expert testified, however, that there is no standard for such wiring and that the final authority as to such wiring is the owner of the vessel. (*Id.* at p. 14). Because plaintiffs have no expert testimony to support their claims, defendants contend, the design-defect claims must be dismissed.

Plaintiffs argue that a genuine issue of material fact exists as to Kelly's knowledge of the vessel's defective components. In his affidavit, Kelly denies that he had any knowledge that the bilge pump or high water alarm system were inoperable. Kelly is not an electrician or an electrical engineer. (Ex. A at ¶¶ 7, 10, attached to Pls.' Mem. Opp.). Kelly contends that it was logical for him to believe that the vessel had power given that it started and operated fine during the day. (*Id.*

---

[1] The Court takes this opportunity to note that the parties' inability to properly cite to their exhibits has rendered this Court's duty more onerous than it should be. For example, the cite to which this footnote is attached references page 15 of Villalon's expert report. However, the quoted statement is on page 13 of the report. This has not been, nor will it be, the last time that this Court has to shuffle through the exhibits to find the proper cite.

at ¶ 10).

Kelly connected the boat to shore/land power, which he believed would charge any batteries that were dead. Kelly argues that he was unaware of the defective battery chargers installed by Formula that had already failed, thus preventing the operation of the bilge pumps and the high water alarm. (*Id.* at p. 7). Plaintiffs note that an inspection conducted after the submersion revealed that the house batteries were dead before the boat had left the dock, and the battery chargers had already failed. (Deposition of Doug Wager at pp. 76-77, attached to Pls.' Mem. Opp.). Plaintiffs' expert notes that the use of the boat by Kelly played no role in the failure of the battery charges. (*Id.* at p. 158-59).

Plaintiffs contend that Kelly's unknown failure to properly secure the lid of the sea strainer would have been inconsequential had the battery chargers worked properly and charged the batteries that powered both the bilge pumps and the high water alarm. Mr. Kirk Fisher, owner of defendant Louisiana Yachting, also testified that the bilge pump systems were powerful enough to handle the inflow of water from an inadequately-capped sea strainer. (Ex. D at pp. 107-08, attached to Defs.' Mem. Supp.).

Plaintiffs assert that defendants' own experts have concluded that the vessel had many design defects. Plaintiffs note that one of defendants' experts -- a Dr. E.P. Hamilton III -- stated, *inter alia*, that (1) the battery charger had failed before submerging; (2) Charles Industries had evidence of failed battery chargers on this type of vessel; and (3) the design defect should have been known to Charles Industries and Formula. (Ex. B, attached to Pls.' Mem. Opp.). Plaintiffs also point out that the expert report of Captain Stanley Konz also notes design defects in the battery chargers. (Ex. C,

attached to Pls.' Mem. Opp.).  Plaintiffs also attach a Formula Dealer Service Bulletin dated November 2, 2007 and entitled "Replacement of 45 Yacht Battery Chargers."  (Ex. D, attached to Pls.' Mem. Opp.).  The bulletin is a battery charger recall notice issued months after Charles Industries put Formula on notice of the defects in the battery chargers.  Fisher testified that they received the recall notice and understood that it applied to Kelly's vessel.  (Ex. D at pp. 108-09, attached to Defs.' Mem. Supp.).

Plaintiffs challenge defense expert Villalon's testimony in his expert report as internally inconsistent.  Plaintiffs contend that Kelly is not an experienced seaman -- but a recreational vessel owner -- and, at the very least, there is a genuine issue of material fact as to whether he is and should be held to the standards articulated by Villalon.  Plaintiffs note that Villalon testified that one would only find a back-up charger on a large luxury yacht but then later refers to Kelly's vessel as a large luxury yacht.  (Ex. G at pp. 5, 15, attached to Defs.' Mem. Supp.).  Accordingly, plaintiffs contend, defendants' own expert report is internally inconsistent.

Defendants argue that they have presented clear evidence showing that Kelly was aware that the vessel's battery charger was not working.  Defendants contend that the day before the incident in question, Kelly phoned Fisher, an employee at Louisiana Yachting, and together they deduced that the battery charger was inoperable.  (Ex. D at pp. 81-82, attached to Defs.' Mem. Supp.).  Defendants note that the Formula's Owner's Manual expressly warns that connecting the vessel to shore power is not infallible.  Defendants point to evidence that Kelly knew that all components powered by the House Batteries (*i.e.*, stereo, lights, toilets) failed to operate.  Kelly allegedly called Fisher and was informed that the D.C. Battery System was down.  Defendants note that the vessel

had been connected to shore power for several weeks, and the batteries had completely died. Accordingly, defendants contend, Kelly can not now claim that he was reasonable in assuming that re-connecting the vessel to shore power would energize the house batteries.

Defendants note that Kelly has owned ten to twelve boats, logged hundreds of hours on the water, been around boats since he was a child and sailed the world for five or six years as a sports fisherman. (Ex. C at pp. 14, 16-19, attached to Defs.' Mem. Supp.). Defendants maintain that Kelly was thus more than just a recreational boat owner.

Defendants also assert that the vessel conformed with all applicable code and design standards. Mike Boyd, Director of Warranty and Service for Formula, wrote a letter to Wager to clarify that the water alarm was, contrary to plaintiffs' arguments, wired correctly and according to normal specifications for a yacht of that size. (Ex. A, attached to Defs.' Reply). Defendants also maintain that Villalon's inconsistent use of the term "large luxury yacht" does not create a genuine issue of material fact. Villalon's expert report is clear, defendants contend, that the vessel complied with all applicable codes and design standards, and plaintiffs present no evidence to the contrary.

As the lengthy recitation of the arguments advanced by the parties demonstrates, what confronts the Court here are competing affidavits, deposition testimony and expert reports that render the design-defect and products-liability claims inappropriate for summary judgment. The extent of Kelly's knowledge, for example, is wholly in dispute. While plaintiffs present competent summary judgment evidence to demonstrate that Kelly did not know of or understand the extent of the vessel's alleged defects, defendants have provided competent summary judgment that he did. The Court, however, must assume as true Kelly's allegations in his affidavit for purposes of

summary judgment. *Parker v. State of La. Dep't of Educ. Special School Dist.*, 323 Fed. Appx. 321, 328 (5th Cir. Apr. 23, 2009). This Court can not make a credibility assessment as to the competing stories regarding the extent of his knowledge. *See id.*

In addition, while defendants present competent summary judgment evidence that no design defect existed -- in the form of its expert reports -- plaintiffs have also presented evidence that there may have been a defect -- namely, in the form of the Formula Dealer Service Bulletin. Indeed, the actual cause of the submersion is hotly contested. Defendants argue that Kelly's actions were the sole cause of the submersion, while plaintiffs contend that the vessel's alleged design defects caused it. There is evidence in the record to support and/or to defeat each theory. Neither does the Court take lightly the internal inconsistency -- whether the vessel is a "large luxury yacht" -- in Villalon's expert report. Denominating the vessel as a "large luxury yacht" could lead to the ultimate conclusion that a back-up battery charger should have been installed on the vessel. Given the voluminous deposition testimony and the amount of expert reports, what the Court has here is a traditional "he said-she said" dispute. Such a dispute is not proper on a motion for summary judgment. *See id.* A jury must assess the credibility of the witnesses and the documents as to the design-defect and products-liability claims. Accordingly, the Court denies summary judgment on these claims.

### 2. Great Lakes' Claims

### a. Redhibition

Defendants challenge Great Lakes' claim in redhibition and ask the Court to dismiss it. In short, defendants contend that Great Lakes lacks standing to bring such a claim. Citing Louisiana

Civil Code article 2520, defendants note that the seller warrants only the buyer against redhibitory defects. La. Civ. Code art. 2520. Defendants assert that Louisiana courts have held that "[t]he right to rescind a sale for redhibitory defect is personal to the buyer." *Aucoin v. Fontenot*, 334 So. 2d 773 (La. Ct. App. 1976).

Defendants note that Great Lakes has argued that it is subrogated to Kelly's claim for redhibition under its insurance policy with Kelly. While defendants do not dispute that Great Lakes may be subrogated to some of Kelly's claims, they argue that subrogating Great Lakes to a claim that is strictly personal would lead to an absurdity. If such were the case, then Kelly and Maverick would have no right of action at all against defendants – a truly absurd result, according to defendants. Defendants contend that the only subrogation interest that Great Lakes may have is the right to recover the money that it has paid to date for the repairs to the vessel.

Great Lakes argues that it is entitled to bring a claim in redhibition. Great Lakes contends that as the insurer of the vessel and pursuant to Kelly's policy with Great Lakes, any and all rights of recovery that Kelly has belongs to it. (Ex. I, attached to Defs.' Mem. Supp.). According to Great Lakes, a conventional subrogation occurs when the obligee, Kelly, receives performance from a third party, Great Lakes, and then subrogates that third party to his rights. Great Lakes cites Professor Saul Litvinoff for the proposition that a conventional subrogation is no different from an assignment of rights and that an assignee or a conventional subrogee occupies a no more favorable position than the original assignor or subrogor. From this, Great Lakes extrapolates that it should not be in a worse position than Kelly. Defendants' argument, Great Lakes contends, would put it in a worse position.

Great Lakes argues that the law of redhibition contemplates that the original purchaser of the item may not be the person who ultimately brings suit. Great Lakes asserts that Louisiana Civil Code article 2538 and *Alvis v. CIT Group/Equipment Financing Inc.*, 918 So. 2d 1177 (La. Ct. App. 2006), support its argument.

Assuming, *arguendo*, that Great Lakes has a right to bring a redhibition claim, defendants argue that Kelly waived any claim for redhibition because he continued to use the vessel after acquiring knowledge of the failed electrical systems and component parts. *See Granger v. Deville*, 583 So. 2d 583 (La. Ct. App. 1991) (holding that a buyer waived claim in redhibition for a destroyed engine when buyer continued to use the vehicle despite knowledge of defects that caused subsequent damage). Defendants contend that Kelly had personal knowledge of the defects on the vessel. Kelly phoned Fisher the day before the incident in question and, after the conversation, was fully aware that the battery charger had failed. (Ex. D at pp. 81-82, attached to Defs.' Mem. Supp.). Despite this knowledge, Kelly still sailed the vessel to Crab Island. Accordingly, defendants contend, because Kelly waived any claim in redhibition, Great Lakes has no claim in redhibition as well.

The Court finds that Great Lakes has standing to assert a claim in redhibition. While the case law and commentary are scarce on this issue, the Louisiana Third Circuit has held that a party may be subrogated to a claim for redhibition. *Alvis v. CIT Group/EQuip. Fin., Inc.*, 918 So. 2d 1177, 1184 (La. Ct. App. 2005) ("We find that this subrogation and assignment would include any redhibition rights CIT might have against the defendants."). *Aucoin v. Fontenot* does not support defendants' argument. There, the court affirmed the dismissal of a *seller's* reconventional demand in redhibition. 344 So. 2d at 777. While the court held that "[t]he right to rescind a sale for a

redhibitory defect is personal to the buyer," it did so only in the context of the *seller's* reconventional demand in redhibition. *Id.* That is not the case here. Louisiana Yachting does not sue plaintiffs in redhibition.

Two problems arise as to defendants' waiver argument. First, defendants only cite the Court to half of the waiver rule. Louisiana courts have stated the waiver rule as follows: "Where the buyer uses the thing purchased after acquiring knowledge of a redhibitory defect *and fails to tender it for repair within a reasonable time*, [he] waives [his] right to claim the benefit of redhibition." *Granger*, 583 So. 2d at 586. No party has briefed the Court on whether Kelly failed to tender the vessel for repair within a reasonable time after he allegedly discovered the redhibitory defect. This issue is thus inadequately briefed.

In addition, the Court finds that a genuine issue of material fact exists as to whether plaintiffs waived any claim in redhibition. Defendants rely on Kelly's alleged knowledge to support their waiver argument. But, as noted above, the Court has already held that a genuine issue of fact exists as to the extent of Kelly's knowledge. Accordingly, Great Lakes' claim in redhibition survives summary judgment.

### b. Punitive Damages

Defendants further argue that Great Lakes is not entitled to punitive damages under the general maritime law. Citing *Miles v. Apex Marine Corp.*, 498 U.S. 19 (1990), defendants argue that plaintiffs are not entitled to punitive damages under general maritime law. While *Miles* did not explicitly address punitive damages, defendants note that many circuits – including the Fifth Circuit – have held that *Miles* precludes an award of punitive damages under general maritime law. *See*

*Scarborough v. Clemco Indus*, 391 F.3d 660 (5th Cir. 2004); *Hunter v. Seabulk Offshore, Ltd.*, 993 F. Supp. 973 (E.D. La. 1998). While defendants note that the Supreme Court recently held that a seaman has a claim for punitive damages for the willful failure to pay maintenance and cure, *Atl. Sounding Co., Inc. v. Townsend*, 557 U.S. ____ (2009), defendants argue that plaintiffs do not fall under the facts of that case.

Lastly, defendants argue that even were punitive damages available, plaintiffs can not demonstrate the level of "willful and wanton" conduct necessary for such an award. Defendants contend that plaintiffs make no such allegation here. In *Boucvault, Jr. v. Sea-Trac Offshore Servs., Inc.*, 943 So. 2d 1204 (La. Ct. App. 2006), the court held that a manufacturing design or defect, standing alone, is insufficient to award punitive damages. Defendants, citing to other case law in this circuit, contend that plaintiffs can not meet their burden here because they can not demonstrate "willful and wanton conduct" or "a reckless disregard for plaintiffs' rights."

Great Lakes argues that punitive damages are available under general maritime law. Citing case law from this Court, Great Lakes notes that when the damages are property damages *and* damages not covered by the Jones Act, the holding of *Miles* and *Guevara v. Maritime Overseas*, 59 F.3d 1496, 1506 (5th Cir. 1995), do not apply. *Maritrans Operating Partners v. Diana T. M/V*, 1999 WL 127250 (E.D. La. Mar. 8, 1999). Great Lakes also notes that the Supreme Court recently upheld a punitive-damages claim for the willful and wanton disregard of the maintenance and cure obligation. *Atl. Sounding v. Townsend*, 557 U.S. ____ (2009). As such, Great Lakes argues that punitive damages are available here unless some express limitation -- like the Jones Act -- exists.

Great Lakes concedes, however, that it will not produce evidence at trial on the willful and

wanton conduct of defendants but will show that claims for punitive damages are available in the form of attorneys' fees under redhibition.

In their reply, defendants assert that even if *Atlantic Sounding* allows punitive damages in a case such as this, Great Lakes would still have to prove that defendants' conduct was "willful and wanton." Because Great Lakes concedes that it will not produce such evidence, defendants maintain that Great Lakes has no claim for punitive damages.

This Court need not determine whether punitive damages are available for a claim such as this under the general maritime law. That question is best left for another day. Great Lakes produced no evidence of willful and wanton conduct in its pleading. Indeed, Great Lakes conceded in its pleading that it will not produce evidence of willful and wanton conduct. At oral argument, counsel for Great Lakes again conceded that this claim is not truly a claim for punitive damages but one for attorneys' fees. Accordingly, the Court dismisses Great Lakes' claim for punitive damages.

## IV.    Conclusion

For the foregoing reasons, the Court GRANTS the Motion for Partial Summary Judgment filed by defendants Louisiana Yachting and Boating Center, L.L.C., Porter, Inc. and Charles Industries, Ltd. [Doc. #51]. The Court DISMISSES the claims of plaintiff John J. Kelly in his individual capacity and the claims of Maverick for all non-pecuniary damages.

The Court further GRANTS IN PART AND DENIES IN PART the Motion for Summary Judgment, or in the Alternative, Motion for Partial Summary Judgment filed by defendants Louisiana Yachting and Boating Center, L.L.C., Porter, Inc. and Charles Industries, Ltd. [Doc. #61]. The Court DISMISSES only Great Lakes' claim for punitive damages. The design-defect claims,

24

the product-liability claims and Great Lakes' claim in redhibition survive summary judgment.

New Orleans, Louisiana, this 22nd day of January, 2010.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**